# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COSME PRESAS, | Case No. 1:13-cv-02038-LJO-SKO (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING CLAIMS AGAINST DEFENDANTS KERN MEDICAL CORRECTIONAL-MEDICINE AND COUNTY OF KERN BE DISMISSED AND ACTION PROCEED AGAINST REMAINING DOE DEFENDANTS |
| v. | |
| KERN MEDICAL CENTER, et al., | |
| Defendants. | |
| | (Doc. 44) |
| | THIRTY-DAY OBJECTION DEADLINE |

## I. Procedural History

Plaintiff Cosme Presas, a state prisoner[1] proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983 on December 13, 2013. On May 21, 2014, the Court dismissed Plaintiff's complaint, with leave to amend, for failure to state a claim. 28 U.S.C. § 1915A. Plaintiff filed the First Amended Complaint on June 23, 2014, which was dismissed with leave to amend on October 1, 2015. Plaintiff filed a Second Amended Complaint on October 26, 2015. (Doc. 38.) Thereafter, a Findings and Recommendation ("F&R") issued recommending dismissal of Nurse John Doe 1, Kern County Sheriff's Department, and Plaintiff's policy or practice claim against municipal entities. (Doc. 39.) An order adopting issued dismissing Nurse John Doe 1 and the Kern County Sheriff's Department with prejudice and allowing one last opportunity for Plaintiff to file an amended complaint to correct deficiencies in Plaintiff's "policy

---

[1] At the time of the events in question in this action, however, Plaintiff was a pretrial detainee.

or practice claim." (Doc. 43.) On January 12, 2016, Plaintiff filed the Third Amended Complaint which is before the Court for screening. (Doc. 44.)

Based on the following analysis, it is recommended that Defendants County of Kern and Kern Medical Correctional-Medicine ("KMCM") and all claims against them be dismissed and Plaintiff be allowed to proceed solely on his medical claims against Defendants Nurses Jane Doe 1-3 and Deputies John Doe 1-6.

## II.     Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. *Iqbal*, 556 U.S. at 678.

Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678-79; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and

to have any doubt resolved in their favor, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the plausibility standard, *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.

**III.    Discussion**

       **A.    Medical Care Claim Against Nurses and Deputies**

Plaintiff only indicates that he is pursuing a claim for violation of his right to medical care.[2] As a pretrial detainee, Plaintiff was protected from conditions of confinement which amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535-36, 99 S.Ct. 1861 (1979); *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017-18 (9th Cir. 2010); *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1244 (9th Cir. 2010). While pretrial detainees' rights are protected under the Due Process Clause of the Fourteenth Amendment, the standard for claims brought under the Eighth Amendment has long been used to analyze pretrial detainees' conditions of confinement claims. *Simmons*, 609 F.3d at 1017-18; *Clouthier*, 591 F.3d at 1242; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). With respect to medical care, the United States Constitution is violated only when jail officials act with deliberate indifference to an inmate's serious medical needs. *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds*, *Peralta v. Dillard*, 744 F.3d 1076, 1082-83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." *Wilhelm*, 680 F.3d at 1122 (citing *Jett*, 439 F.3d 1091, 1096 (9th Cir. 2006)). Deliberate indifference is shown by "(a) a purposeful act or

---

[2] Plaintiff has apparently abandoned his claims under California law because despite having been informed that the Court cannot refer to a prior pleading once an amended complaint is filed, he does not restate any allegations pertaining to California tort law or of compliance with the Government Claims Act. *Shirk v. Vista Unified Sch. Dist.*, 42 Cal.4th 201, 208-09 (Cal. 2007); *State v. Superior Court of Kings Cnty. (Bodde)*, 32 Cal.4th 1234, 1239 (Cal. 2004).

failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." *Wilhelm*, 680 F.3d at 1122 (citing *Jett*, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. *Snow*, 681 F.3d at 985 (citation and quotation marks omitted); *Wilhelm*, 680 F.3d at 1122.

Plaintiff alleges that he had surgery on his nose on February 6, 2013, and his surgeon prescribed antibiotics and pain medication. However, when he was transferred back to the jail the same day, the nurses and deputies with whom he came into contact refused to provide him with pain medication. Plaintiff alleges that he was left in excruciating pain between February 6, 2013, and February 8, 2013, and again between February 14, 2014, and February 17, 2013. Plaintiff's allegations are sufficient to support the existence of an objectively serious medical need and to link Defendants Nurse Jane Doe 1, Nurse Jane Doe 2, Nurse Jane Doe 3, Deputy John Doe 1, Deputy John Doe 2, Deputy John Doe 3, Deputy John Doe 4, Deputy John Doe 5, and Deputy John Doe 6 to knowledge and disregard thereof. *Wilhelm*, 680 F.3d at 1122. Nurse John Doe 1, was previously dismissed with prejudice. (*See* Doc. 39, F&R; Doc. 43, O Adopt.) To the extent that Plaintiff implicated Nurse John Doe 1 as a defendant, his allegations are solely utilized to analyze his claim against the County of Kern and KMCM.

**B.  Municipal Liability Claim**

When the Second Amended Complaint was screened, the District Judge granted Plaintiff one final opportunity to amend his municipal policy or practice claim because it appeared "plausible that [Plaintiff] may be able to sufficiently allege a cognizable Eighth Amendment policy or practice claim based upon a policy of inaction that required a doctor's prescription for ibuprofen and Tylenol and a 'strict sick call procedure' that operated so as to delay inmate doctor visits for up to weeks." (Doc. 43, p. 5:3-11.)

This determination was arrived at based on the following quote from Plaintiff's objections to the Findings and Recommendations to dismiss the municipal defendants:

> Kern Medical Center operating as Kern Medical Correctional Center in the jail has the custom and exercises the practice of not having a medical doctor at the facility 24 hours a day and of instructing the nurses that medications such as ibuprofen or Tylenol, which I asked for, are to prescribed by a doctor before they

4

> may be given to an inmate. This custom and practice is what moved the nurses to deny me pain medication such as ibuprofen or Tylenol, to alleviate the pain of my nose surgery, when I asked for it due to the medication prescribed by my surgeon not being ordered and, or, filled on 2-5-13 up to 2-8-13 and it being cut off, earlier than prescribed to be, on 2-14-13 up to 2-17-13. On those days when my medication prescribed was not filled and cut off early I was not able to obtain medication first due to there not being a doctor on staff 24 hours to make sure an order is filled and to provide a substitute for the meanwhile, and also another 'moving force' would be the strict sick call procedure which all the nurses are made to tell and make inmates follow which makes it take weeks to see a doctor and which they use to ignore emergencies.

(Doc. 43, 2:22-3:3, quoting Doc. 42, 1:27-2:13.)

As stated in the District Judge's order, a municipality is responsible for a constitutional violation, only when an "action [taken] pursuant to [an] official municipal policy of some nature" caused the violation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). The official municipal policy in question may be either formal or informal. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 131 (1988) (plurality opinion) (acknowledging that a plaintiff could show that "a municipality's actual policies were different from the ones that had been announced"); *id.* at 138 (Brennan, J., concurring) (stating that municipal policies may be formal or informal).

A formal policy exists when "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (plurality opinion). When pursuing a *Monell* claim stemming from a formal policy, a plaintiff must allege and ultimately prove that the municipality "acted with the state of mind required to prove the underlying violation." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143-44 (9th Cir. 2012) (explaining that the plaintiff must prove that the municipal defendants acted with deliberate indifference, the same standard that a plaintiff has to establish in a § 1983 claim against an individual defendant). Plaintiff alleges no facts to show a decision was made by any official responsible for establishing either that nurses could not give detainees ibuprofen or Tylenol absent a physician's order, or that inmates could only see a physician after submitting a sick call slip which took weeks to occur. Plaintiff's allegations also fail to provide any basis upon which to infer that the municipal defendants were aware of any such procedures or policies.

5

An informal policy exists when a plaintiff can prove the existence of a widespread practice that, although not authorized by an ordinance or an express municipal policy, is "so permanent and well settled as to constitute a custom or usage with the force of law." *Praprotnik*, 485 U.S. at 127. Such a practice, however, cannot ordinarily be established by a single constitutional deprivation, a random act, or an isolated event. *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999). Instead, a plaintiff must show a pattern of similar incidents in order for the factfinder to conclude that the alleged informal policy was "so permanent and well settled" as to carry the force of law. *See Praprotnik*, 485 U.S. at 127.

Plaintiff alleges that Nurses Jane Doe 2 and 3 told him that they could not give him ibuprofen or Tylenol for his pain without a doctor's prescription. (Doc. 44, pp. 6-7.) Plaintiff also alleges that when he saw Nurse John Doe 1 during "the 2 a.m. med pass of 2-8-13," Plaintiff told him what Nurses Jane Doe 2 and 3 had stated, and Nurse John Doe 1 responded that it was not true, and gave Plaintiff Tylenol for his pain. (*Id.*, p. 7.) This does not show that there was a policy in place that restricted nurses from giving inmates ibuprofen or Tylenol for pain unless a physician had ordered it which was "so permanent and well settled" as to carry the force of law. *See Praprotnik*, 485 U.S. at 127.

Plaintiff was also allowed to amend his allegations to attempt to state a policy or procedure claim based on a " 'strict sick call procedure' that operated so as to delay inmate doctor visits for up to weeks." (Doc. 43, p. 5.) Plaintiff alleges that during the "8 p.m. med pass" on February 6, 2013, when Nurse Jane Doe 2 responded to his inquiry about his missing pain medication, *Plaintiff explained to her* that he was in extreme pain and "that it takes weeks to see a doctor" and that he needed to see one immediately. (*Id.*, p. 6.) She told him nothing could be done because a doctor is not at the facility around the clock, but that she would look into it. (*Id.*)

After midnight on February 7, 2013, which is again outside of normal business hours, Plaintiff explained the situation to Deputy John Doe 1 who was walking by Plaintiff's cell who responded that he would see if he could take Plaintiff to the infirmary, but did not end up doing so. (*Id.*) That same deputy later ignored Plaintiff when Plaintiff called out to him. (*Id.*) At the "2 a.m. med pass," Plaintiff again inquired about his pain medication to Nurse Jane Doe 2 who

6

responded that she had not looked into it. (*Id.*) Deputy John Doe 2 also answered when Plaintiff later pressed the call button and stated that Plaintiff was not to bother him because he could not do anything about it. (*Id.*) At the "8 a.m. med pass" that same day, Plaintiff asked Nurse Jane Doe 3 about his pain medication; she responded that it had not been ordered and denied his request for Tylenol or ibuprofen. (*Id.*, at p. 7.) When Plaintiff asked if he could go to the infirmary, she denied his request because he "was not on his list." (*Id.*) When Plaintiff explained the extent of his pain, Nurse Jane Doe 3 walked away and Deputy John Doe 3 told Plaintiff to shut his mouth. (*Id.*)

Plaintiff pressed the intercom and Deputy John Doe 4 answered. (*Id.*) Plaintiff asked "to see the doctor that is in the facility during the day," but was told to let the floor deputy know about it. (*Id.*) Plaintiff responded that he had done so to no avail. (*Id.*) Deputy John Doe 4 responded that he would take Plaintiff to the infirmary when he had "opportunity to walk by the cells." (*Id.*) However, when he walked by, Deputy John Doe 4 told Plaintiff he was busy and to ask the next shift. (*Id.*) At the "2 p.m. med pass" on February 7, 2013, Nurse Jane Doe 3 denied Plaintiff's request for pain medications and indicated that she could not take Plaintiff to the infirmary. (*Id.*) Around 3 p.m. that same day, Deputies John Doe 5 and 6 declined to take Plaintiff to the infirmary and the latter told Plaintiff not to bother pressing his intercom. (*Id.*) However, Plaintiff alleges that he was seen by Nurse Practitioner Katie Lundgren on February 7, 2013, who apologized, but explained that his medication was discontinued by accident and he was prescribed 325 mg. Norco for five days. (*Id.*, p. 8.)

As stated above, Plaintiff saw Nurse John Doe 1 during the "2 a.m. med pass" on February 8, 2013, and told him of the difficulty Plaintiff was having obtaining pain medication. (*Id.*, p. 8.) Later that day, Plaintiff was seen by the surgeon who removed the gauze packing from Plaintiff's nose and gave him a prescription for pain medication that the jail had. (*Id.*)

While some of these allegations might seem to suggest that there was a procedure in place for inmates to submit a form before they could see a doctor, taken as a whole, they do not show that any such procedure was strictly adhered to, or that an inmate was regularly required to submit such a request and wait for weeks to see a doctor. In fact, Plaintiff was taken back to see the

surgeon the day after the Nurse Practitioner saw him and on the same day that Nurse John Doe 1 saw him. The above sequence of events is not desirable and equates to cognizable claims for deliberate indifference against the individual Defendant Doe nurses and deputies. Their deliberate indifference of varying responses to Plaintiff's pleas for pain medication do not, however, plausibly equate to a "strict sick call procedure" on the part of the municipal defendants which prohibited Plaintiff from receiving pain medication prescribed by the surgeon.

Thus, despite repeated efforts, Plaintiff fails to state a cognizable claim against the municipal defendants and these Defendants should be dismissed.

### IV.     Conclusion and Recommendation

Plaintiff's Third Amended Complaint states cognizable claims for relief against Defendants Nurse Jane Doe 1, Nurse Jane Doe 2, Nurse Jane Doe 3, Deputy John Doe 1, Deputy John Doe 2, Deputy John Doe 3, Deputy John Doe 4, Deputy John Doe 5, and Deputy John Doe 6 for denial of medical care, in violation of the Due Process Clause. Plaintiff was previously given leave to amend to cure the deficiencies, but he was unable to do so. Based on the nature of the continuing deficiencies in Plaintiff's pleading and the age of this case, further leave to amend is not warranted. *Akhtar v. Mesa*, 698 F.3d 1202, 1212-13 (9th Cir. 2012); *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, the Court HEREBY RECOMMENDS that:

1. this action proceed on the Third Amended Complaint against Defendants Nurse Jane Doe 1, Nurse Jane Doe 2, Nurse Jane Doe 3, Deputy John Doe 1, Deputy John Doe 2, Deputy John Doe 3, Deputy John Doe 4, Deputy John Doe 5, and Deputy John Doe 6 for denial of medical care, in violation of the Due Process Clause; and
2. the County of Kern and Kern Medical Correctional Center and all claims against them be dismissed with prejudice for failure to state a claim.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate

8

Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **December 15, 2016**              /s/ *Sheila K. Oberto*
                                           UNITED STATES MAGISTRATE JUDGE